UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————— x
HASAN ABBAS, Individually and on Behalf  :  Civil Action No.
of All Others Similarly Situated,          :
                                        :  CLASS ACTION COMPLAINT
                Plaintiff,    :
                                          :
     vs.                          :  JURY TRIAL DEMANDED
                                          :
JPMORGAN CHASE & CO. and J.P.        :
MORGAN SECURITIES LLC,           :
                                        :
              Defendants.  :
                                        :
————————————————— x

By and through his undersigned counsel, Hasan Abbas ("Plaintiff") brings this class action against defendant JPMorgan Chase & Co. ("JPMorgan") and its wholly-owned subsidiary, defendant J.P. Morgan Securities LLC ("JPMS") (collectively, "Defendants"), upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including, without limitation, review and analysis of: (a) documents created and distributed by Defendants; (b) public filings made by JPMorgan with the U.S. Securities and Exchange Commission; (c) press releases disseminated by Defendants; and (d) news articles, websites, and other publicly available information concerning Defendants.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action to recover damages arising out of Defendants' unlawful conduct related to the JPMorgan Chase Deposit Account program ("Sweep Program"), which transfers idle customer cash into interest-bearing "cash sweep" accounts.

2.      Under the Sweep Program, JPMS sweeps customers' idle cash deposits into separate accounts that are highly lucrative for Defendants and their affiliate banks but pay unreasonably low, below-market interest rates to customers.  As such, Defendants use the Sweep Program to generate massive revenue for themselves at the expense of their customers.

3.      Defendants' use of the Sweep Program to enrich themselves by paying unreasonably low interest rates breaches their fiduciary duties and contractual obligations to customers and violates several state and federal laws including the Racketeer Influenced and Corrupt Organizations Act ("RICO Statute") and the Investment Advisers Act of 1940 ("Advisers Act").

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court also has subject matter jurisdiction under 18 U.S.C. §1964(c), 28 U.S.C. §1331, and 50 U.S.C. §80b-14 because Plaintiff brings claims arising under the RICO Statute, 18 U.S.C. §1962, and the Advisers Act, 50 U.S.C. §§80b-1-21.

5.      This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants had offices in, did sufficient business in, had sufficient contacts with, and intentionally availed themselves of the laws and markets of New York through the promotion, sale, marketing, distribution, and operation of their products and services.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because, during the relevant time period, Defendants transact business and had offices in this District, and many of the acts and practices complained of herein occur in substantial part in this District.

7.      In connection with the challenged conduct, Defendants, directly or indirectly, use the means and instrumentalities of interstate commerce, including, without limitation, the United States mails and interstate telephone communications.

## PARTIES

**Plaintiff**

8.      Plaintiff Hasan Abbas is a citizen of California.  During the relevant time period, Plaintiff was a JPMS IRA account holder and a JPMS brokerage account holder.  As a holder of both types of accounts, Plaintiff's uninvested cash was swept into the banks that Defendants

selected in their discretion at the unreasonably low interest rates alleged herein pursuant to the Sweep Program.

**Defendants**

9.      Defendant JPMorgan Chase & Co. is a Delaware corporation headquartered at 383 Madison Avenue, New York, New York 10179.  JPMorgan is a financial services company that conducts business throughout the United States, with assets totaling $4.1 trillion, loans totaling approximately $1.3 trillion, and 143,412 employees.  JPMorgan is the parent company and control person of Defendant JPMS.

10.      Defendant J.P. Morgan Securities LLC is a Delaware limited liability company headquartered at 383 Madison Avenue, New York, New York 10179.  JPMS is a broker-dealer and a Registered Investment Advisor that offers brokerage and investment advisory services to its nationwide client base.  JPMS acts as its customers' agent for the establishment, maintenance, and operation of the Sweep Program.  JPMS is a wholly-owned subsidiary of, and controlled by, Defendant JPMorgan.

## SUBSTANTIVE ALLEGATIONS

**Background on Defendants' Sweep Program**

11.      JPMorgan is one of the largest financial services firms in the country.  JPMorgan's wholly-owned subsidiary, JPMS, offers brokerage and investment advisory services to customers nationwide.

12.      Defendants provide the Sweep Program to brokerage account customers at JPMS. The terms and conditions Sweep Program are set forth in Defendants' Investment Account Agreements and Disclosures Booklet ("Investment Agreements"), including the JPMorgan Chase

Deposit Account Agreement ("Deposit Agreement") (collectively, "Account Agreement"), [1] and Guide to Investment Services and Brokerage Products ("Guide")[2] (together with the Account Agreement, "Sweep Program Documents"). The Guide incorporates the terms of the Account Agreement. The Sweep Program Documents are governed by New York state law.

13.     Under the Sweep Program, JPMS automatically sweeps eligible brokerage clients' uninvested cash balances into interest bearing deposit accounts ("Brokerage Deposit Accounts") with JPMorgan Chase Bank, National Association ("JPMCB"), a bank affiliated with Defendants.

14.     The Sweep Program Documents provide that JPMS acts as an agent for customers in the Sweep Program, stating, "When you select the Deposit Account for the automatic investment or 'sweep' of available cash held in your JPMS account, such balances are remitted for deposit by JPMS, acting as your agent, into a Demand Deposit Account maintained at JPMCB" and "JPMS acts as exclusive custodian and agent with respect to all transactions relating to the Deposit Account feature of customers' JPMS accounts."[3]

15.     The sweep interest rates paid to customers are established by JPMCB and "reset periodically at the discretion of JPMCB."[4]

---

[1]     JPMorgan, *Investment Account Agreements and Disclosures Booklet* (Sept. 2024), https://www.chase.com/content/dam/chase-ux/documents/personal/investments/jpm-investment-account-agreements.pdf.

[2]     JPMorgan, *Guide to Investment Services and Brokerage Products* (2024), https://investment.jpmorgan.com/content/dam/jpm/global/disclosures/by-regulation/brokerage_products_services_jpms.pdf.

[3]     *Deposit Agreement*, *supra* note 1.

[4]     *Id.*

**Defendants Reap Significant Benefits from the Sweep Program to the Detriment of Their Customers, Who Are Paid Unreasonably Low Interest Rates**

16.    The Sweep Program provides highly lucrative financial benefits to Defendants and their affiliated bank, JPMCB.  JPMCB uses deposits from the Sweep Program "to fund current and new businesses, including lending activities and investments," creating an admitted "financial incentive" to enroll brokerage customers in the Sweep Program and use Brokerage Deposit Accounts at JPMCB as the primary sweep option.[5]

17.    Moreover, Defendants' and JPMCB's profitability from the Sweep Program depends on the "spread" (*i.e.*, difference) between the interest paid to customers and the income made from lending and investing customers' deposits.[6]  This creates a conflict of interest with customers because Defendants and JPMCB are incentivized to pay lower interest rates to customers in order to increase their own profits.[7]

18.    Due to this adverse financial incentive, Defendants fail to pay reasonable sweep interest rates to Brokerage Deposit Accounts.  As defined in the Oxford English Dictionary, the term "reasonable" is synonymous with "fair" and "equitable."

19.    The U.S. Department of Labor defines a "reasonable" rate of interest as "a rate of interest determinable by reference to short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign

---

[5]    *Guide, supra* note 2.

[6]    *Id.*

[7]    The SEC also recognizes that "cash sweep programs" are a "common source[] of conflicts of interest."  U.S. Securities and Exchange Commission, *Staff Bulletin:  Standards of Conduct for Broker-Dealers and Investment Advisers Conflicts of Interest* (Sept. 9, 2024), https://www.sec.gov/tm/iabd-staff-bulletin-conflicts-interest.

short term debt (*e.g.*, in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated."[8]

20.    Similarly, the U.S. Internal Revenue Service defines an "[a]rm's length interest rate" as "a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances."[9]  Thus, an interest rate is reasonable if it is based on a fair market valuation.

21.    In contrast, Defendants' Sweep Program pays below-market interest rates of 0.01% on both retirement and nonretirement accounts.[10]  These miniscule rates are ***significantly*** below several objective benchmarks of reasonableness:

- **Competitors' Sweep Programs**.  Defendants' sweep interest rates are far below fair market value, as demonstrated by the rates paid by Defendants' competitors who offer FDIC-insured sweep accounts similar to those in the Sweep Program. For example, competitor Moomoo's rate is 4.35%,[11] Webull's rate is 4.00%,[12] Vanguard's rate is 3.90%,[13] Fidelity's rate is 2.32%,[14] and Robert W. Baird's rate is between 1.52% and 3.11%.[15]

---

[8]    68 Fed. Reg. 34646 (2003).

[9]    26 C.F.R. §1.482-2(a)(2).

[10]    JPMorgan Wealth Management, *Sweep Option Yields* (2024), https://www.jpmorgan.com/wealth-management/wealth-partners/legal/sweepoption.

[11]    Moomoo, *Boost your uninvested cash with 4.6% APY*, https://www.moomoo.com/us/invest/cashsweep (last visited Dec. 9, 2024).

[12]    Webull, *Webull High-Yield Case Management*, https://www.webull.com/cash-management (last visited Dec. 9, 2024).

[13]    Vanguard, *Your cash deserves a good home*, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last visited Dec. 9, 2024).

[14]    Fidelity, *Fidelity Individual Retirement Accounts (IRA)*, https://digital.fidelity.com/prgw/digital/fdic-interest-rate/ira (last visited Dec. 9, 2024).

[15]    Baird, *Cash Sweep Program*, https://www.rwbaird.com/cashsweeps/ (last visited Dec. 9, 2024).

- **Defendants' Other Interest-Bearing Accounts**.  Further, the sweep interest rates paid by the Sweep Program are far lower than the interest rates paid by Defendants' other products outside of the Sweep Program.  For example, JPMorgan's FDIC-insured Premium Deposit account pays up to 3.80% and money market funds offered by JPMorgan pay up to 4.47%.[16]

- **Federal Funds Rate**.  The sweep interest rates in the Sweep Program are also far below the U.S. Federal Reserve's benchmark federal funds rate, currently at 4.50% to 4.75%.[17]

- **Three-Month Treasury Bill Rate**.  The sweep interest rates in the Sweep Program are far below the three-month U.S. treasury bill rate, currently at 4.31%.[18]

- **Repurchase Rate**.  The sweep interest rates in the Sweep Program are well below the overnight interest rate at which the U.S. Federal Reserve repurchases securities from private banks (*i.e.*, the repo rate), which is currently 4.55%.[19]

22.    These benchmarks individually and collectively demonstrate that the sweep interest rates in the Sweep Program are unreasonable.  As a result, Plaintiff and the Class (defined below) suffer damages by receiving far lower interest payments than they would receive if the sweep interest rates were reasonable.

**Defendants Breach Their Contractual Obligations and Fiduciary Duties Related to the Sweep Program**

23.    Under the Sweep Program Documents, JPMS agrees to act as its customers' agent, and, thus, is contractually obligated to act in its customers' best interests in seeking and negotiating reasonable interest rates under the Sweep Program.  However, as discussed above, JPMS fails to

---

[16]  *Sweep Option Yields*, *supra* note 10.

[17]  Board of Governors of the Federal Reserve System, *Economy at a Glance – Policy Rate*, https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm (last visited Dec. 9, 2024).

[18]  Federal Reserve Bank of St. Louis, *3-Month Treasury Bill Secondary Market Rate, Discount Basis*, https://fred.stlouisfed.org/series/DTB3 (last visited Dec. 9, 2024).

[19]  Federal Reserve Bank of St. Louis, *Overnight Reverse Repurchase Agreements Award Rate: Treasury Securities Sold by the Federal Reserve in the Temporary Open Market Operations*, https://fred.stlouisfed.org/series/RRPONTSYAWARD (last visited Dec. 9, 2024).

act in its customers' best interests because the interest rates that JPMS agrees to pay to its customers are unreasonable compared to several objective benchmarks, including interest rates paid by competitors and the federal funds rates.

24.     In addition, for traditional and Roth IRA account-holders, the Investment Agreements incorporate Internal Revenue Code ("IRC") provisions requiring reasonable interest rates when fiduciaries such as JPMS deposit funds from IRA accounts into banks and other financial institutions.  Specifically, the Investment Agreements provide that JPMS "may invest any uninvested cash held in the IRA in bank savings instruments or bank deposits bearing a ***reasonable rate of interest*** in JPMCB's banks" so long as it does so in compliance with applicable laws.[20]

25.     The Investment Agreements also state that a "disqualified person" includes "any person who is a fiduciary or who provides services to the IRA" and that "[p]rohibited transactions" include any direct or indirect "[t]ransfer to, or use by or for the benefit of, a disqualified person of the income or assets of the IRA"; "[a]ct by a disqualified person who is a fiduciary whereby they deal with the income or assets of the IRA in their own interest or for their own account"; or "[r]eceipt of any consideration for the personal account of any disqualified person who is a fiduciary dealing with the IRA in connection with a transaction involving the income or assets of the IRA." [21]

26.     As summarized by IRS Publication 590, IRC provisions similarly state that "disqualified persons include your fiduciary," such as anyone who "[e]xercises any discretionary authority or discretionary control in managing your IRA or exercises any authority or control in

---

[20]     *Investment Agreements*, *supra* note 2.

[21]     *Id.*

managing or disposing of its assets," and that "prohibited transactions" are "any improper use of your traditional IRA account or annuity by you, your beneficiary, or any disqualified person."[22]

27.    The IRC further states that a "disqualified person" includes a "fiduciary" and "a person providing services to the [IRA] plan" and that "prohibited transaction[s]" include any direct or indirect "transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan"; "act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account"; or "receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan."[23]  The IRC provides limited "exemptions" for these prohibited transactions, including "the investment of all or part of a plan's assets in deposits *which bear a reasonable interest rate* in a bank or similar financial institution."[24]

28.    Therefore, under the IRC, Defendants are "disqualified person[s]" and cash sweeps from IRA accounts to Defendants' affiliate, JPMCB, for the benefit of Defendants and JPMCB are "prohibited transactions."    The cash sweeps are not exempt because JPMCB does not pay

---

[22]    Department of the Treasury, Internal Revenue Service, *Distributions from Individual Retirement Arrangements (IRAs)*, Publication 590-B (Mar. 12, 2024), https://www.irs.gov/pub/irs-pdf/p590b.pdf.

[23]    26 U.S.C. §4975(c)(1)(D)-(F), (e)(2).

[24]    26 U.S.C. §4975(d)(4).  Department of the Treasury regulations confirm that, under the IRC, investing retirement plan assets in deposits in a disqualified bank is exempted only if the deposits "bear[] a reasonable rate of interest" and, "in the case of a bank or similar financial institution that invests plan assets in deposits in itself or its affiliates under an authorization contained in a plan or trust instrument," the authorization must name the institution and "state that [it] . . . may make investments in deposits which bear a reasonable rate of interest in itself (or in an affiliate)."  26 C.F.R. §54.4975-6(b)(1), (3); *see also* 29 U.S.C. §1108(b)(1), (4) (similar rules under ERISA Sections 408(b)(1) and (4) exempting interested party transactions that "bear a reasonable rate of interest").

reasonable sweep interest rates, as discussed above.    Thus, Defendants' Sweep Program transactions violate the IRC and the contractual provisions of the Investment Agreements that incorporate the IRC.

29.    Further, JPMS' conduct related to the Sweep Program violates its fiduciary duties. As an investment advisor, JPMS owes a fiduciary duty to its clients under the Advisers Act.[25]  In particular, JPMS is obligated to "serve the best interest of its client and not subordinate its client's interest to its own" and was not permitted to "place its own interests ahead of the interests of its client."[26]  JPMS owes a similar duty of care to its retail clients pursuant to Regulation Best Interest, which requires it to act in its retail customers' best interests and prohibits it from placing its own interests ahead of its retail customers' interests.[27]  In violation of these duties, however, JPMS uses the Sweep Program to enrich Defendants and their affiliate, JPMCB, at the expense of customers who are paid unreasonably low interest rates.

**Defendants Make Material Misrepresentations and Omissions Regarding the Sweep Program**

30.    In the Sweep Program Documents, Defendants make material omissions by failing to disclose that, as discussed above, Defendants established and use the Sweep Program to enrich themselves by paying unreasonably low interest rates to customers in order to increase Defendants' financial benefits from the Sweep Program.

---

[25]  *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019) (interpreting Section 206 of the Advisers Act, 15 U.S.C. §80b-6).

[26]  *Id.*

[27]  *See* Securities and Exchange Commission, Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33320, 17 C.F.R. §240.15l-1 (July 12, 2019).

31.     The Sweep Program Documents also misleadingly state, "The interest rate paid on Deposit Account balances will vary based on business and economic conditions and whether you have the Chase Deposit Sweep or the J.P. Morgan Deposit Sweep."[28]  This statement is misleading and omits material facts because it implies that the Sweep Program pays market interest rates based on business and economic conditions when, in fact, the Sweep Program pays below-market and unreasonably low interest rates.

32.     Further, the Sweep Program Documents misleadingly state that the Sweep Program "interest rate **may be** higher or lower than the rate available to direct depositors of JPMCB for comparable accounts."[29]  This statement is misleading and omits material facts because, in reality, the Sweep Program interest rates are **always** unreasonably low and significantly below market interest rates.

33.     With respect to IRA accounts, the Sweep Program Documents also misleadingly state that JPMS "may invest any uninvested cash held in the IRA in bank savings instruments or bank deposits bearing **a reasonable rate of interest** in JPMCB's banks so long as (to the extent necessary) such investment is in compliance with section 4975(d)(4) of the [IRC], Treasury regulations section 54.4975-6(b)(1) . . . or other applicable law."  This statement is misleading and omits material facts because, as discussed above, (a) Defendants pay unreasonably low interest rates on uninvested cash that JPMS sweeps from IRA accounts into JPMCB accounts; and (b) such deposits are not in compliance with applicable laws including Section 4975(d)(4) of the IRC and Section 54.4975-6(b)(1) and (3) of Department of the Treasury regulations.

---

[28]   *Deposit Agreement*, *supra* note 1; *Guide*, *supra* note 2.

[29]   *Id.*

**Defendants Violate the RICO Statute**

34.     Defendants violate the RICO Statute through their implementation of the Sweep Program.

35.     JPMS is an "enterprise" within the meaning of the RICO Statute.  Through JPMS, Defendants knowingly and intentionally devised and operate the Sweep Program as a scheme to defraud customers, including Plaintiff and the Class.  Defendants use the Sweep Program to benefit and enrich themselves through, among other things, the payment of unreasonably low interest rates to customers on money deposited into the Sweep Program.

36.     The Sweep Program involves commercial activities across state lines, including Defendants' distribution of the Sweep Program Documents to customers, and Defendants' receipt and transfer of money deposited by customers.

37.     Through the Sweep Program, Defendants conduct and participate in a pattern of racketeering activity within the meaning of the RICO Statute ("Racketeering Acts").  Defendants' Racketeering Acts include indictable, predicate offenses under 18 U.S.C. §§1341 and 1343 based on Defendants' fraudulent use of interstate mail and wire communications, including posting the materially false and misleading Sweep Program Documents on their public website and distributing them to customers throughout the country.

38.     The Racketeering Acts are related in that they are taken in furtherance of Defendants' Sweep Program scheme.  The Racketeering Acts occurred, and continue to occur, regularly and continuously over a multi-year period during the operation of the Sweep Program.

39.     Defendants conduct the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the Sweep Program scheme, including posting the

materially false and misleading Sweep Program Documents on their public website and distributing them to customers throughout the country.

40.    As Sweep Program customers, Plaintiff and the Class were damaged by Defendants' Racketeering Acts due to Defendants' payment of unreasonably low interest rates on the money customers deposited into the Sweep Program.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all persons who had cash deposits or balances in Sweep Program Brokerage Deposit Accounts ("Class").   Excluded from the Class are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42.    The Class members are so numerous that their individual joinder is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands, and are geographically dispersed, because JPMorgan oversees $4.1 trillion in client assets worldwide.

43.    Plaintiff's claims are typical of Class members' claims because Plaintiff's cash deposits were subject to the Sweep Program and, therefore, Plaintiff's claims, and those of all other Class members, arise from the same wrongful conduct by Defendants alleged herein.

44.    Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel experienced and competent in complex class action litigation.  Plaintiff has no interests that are contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.

45.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class or a risk of adjudications that, as a practical matter, would be dispositive of the interests of other Class members who were not parties to the adjudications or would substantially impair or impede the ability of such Class members to protect their interests.

46.    Because Defendants act or refuse to act on grounds that apply generally to the Class, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

48.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants act on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

(a)    whether Defendants violate the laws as alleged herein;

(b)    whether Defendants owe fiduciary duties to Plaintiff and members of the Class in connection with the Sweep Program;

(c)    whether Defendants breach their fiduciary duties to Plaintiff and members of the Class in connection with the Sweep Program;

(d)     whether Defendants violate the Advisers Act;

(e)     whether Defendants violate the RICO Statute;

(f)     whether Defendants make material misrepresentations and/or omissions in connection with the Sweep Program;

(g)     whether Defendants are unjustly enriched by their wrongful conduct;

(h)     whether the members of the Class sustain damages as a result of the alleged wrongful conduct by Defendants, and, if so, the appropriate measure of damages; and

(i)     whether the members of the Class are entitled to attorneys' fees and costs and, if so, the appropriate amount of attorneys' fees and costs.

## COUNT I

## BREACH OF FIDUCIARY DUTIES AGAINST ALL DEFENDANTS

49.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

50.     JPMS is the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  JPMorgan owns and controls JPMS.

51.     Defendants owe fiduciary duties to Plaintiff and the Class, including a duty to act in the best interests of, and deal fairly and honestly with, Plaintiff and the Class.

52.     Defendants violate their duty to act in the best interests of Plaintiff and the Class by using the Sweep Program to enrich themselves and their affiliated bank, JPMCB, at the expense of customers who are paid unreasonably low interest rates, as described above.

53.     Defendants also violate their duty to deal fairly and honestly with Plaintiff and the Class by making material misrepresentations and omissions in the Sweep Program Documents, as described above.

54.     Further, Defendants violate their duty to act with reasonable care to verify the truthfulness of the information set forth in the Sweep Program, which are materially misleading and omit material facts for the reasons described above.

55.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and the Class suffer damages and are entitled to recover such damages from Defendants.

**COUNT II**

**VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940
AGAINST ALL DEFENDANTS**

56.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

57.     JPMS is registered as an investment adviser under the Advisers Act.  JPMorgan owns and controls JPMS.

58.     JPMS violates Section 206 of the Advisers Act by failing to serve the best interests of its clients, Plaintiff and the Class, and placing its own interests ahead of the interests of Plaintiff and the Class in connection with the Sweep Program, as further alleged herein.  *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019).

59.     The Account Agreement should be deemed void pursuant to Section 215 of the Advisers Act, which provides that every

(b) . . . contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

60.     Accordingly, Plaintiff and the Class seek rescission of the Account Agreement and restitution of the consideration given pursuant to its purported terms.

## COUNT III

## BREACH OF CONTRACT AGAINST ALL DEFENDANTS

61.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

62.     Plaintiff and the Class entered into the Account Agreement with JPMS concerning the Sweep Program.  JPMorgan owns and controls JPMS.

63.     According to the Deposit Agreement, JPMS is contractually obligated to act as an agent on behalf of Plaintiff and the Class, and, thus, is contractually obligated to act in Plaintiff's and the Class' best interests in seeking and negotiating reasonable sweep interest rates under the Sweep Program.

64.     Defendants breach their contractual obligations by failing to provide Plaintiff and the Class with reasonable interest rates on their deposits in the Sweep Program.  Rather, the sweep interest rates provided by JPMS are below market and unreasonably low.  As such, JPMS denied Plaintiff and the Class the full benefit of their bargain under the Account Agreement.

65.     As a direct and proximate result of JPMS' breach of contract, Plaintiff and the Class sustained damages.

## COUNT IV

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS

66.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

67.     Plaintiff entered into the Account Agreement with JPMS concerning the Sweep Program.  JPMorgan owns and controls JPMS.

68.     Implicit in the Account Agreement are duties of good faith and fair dealing.

69.     Defendants breach their duties of good faith and fair dealing by failing to provide Plaintiff and the Class with reasonable interest rates on their deposits in the Sweep Program. Rather, the interest rates provided by Defendants are below market and unreasonably low.  As such, Defendants deny Plaintiff and the Class the full benefit of their bargain under the Account Agreement.

70.     As a direct and proximate result of Defendants' breach of the implied covenants of good faith and fair dealing, Plaintiff and the Class sustain damages.

## COUNT V

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1962(c)-(d), AGAINST ALL DEFENDANTS

71.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

72.     This claim arises under 18 U.S.C. §1962(c)-(d) of the RICO Statute, which provide in relevant part:

> (c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

> (d)     It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

73.     At all relevant times, Defendants are "person[s]" because they are capable of holding a legal or beneficial interest in property.

74.     JPMS is an enterprise engaged in interstate commerce.  Through JPMS, Defendants knowingly and intentionally devised and operate the Sweep Program as a scheme to defraud investors.  Defendants use the Sweep Program to enrich themselves and their affiliated bank, JPMCB, by paying unreasonably low interest rates to Sweep Program customers.

75.     Defendants conduct and participate in multiple, related Racketeering Acts for the purpose of implementing the Sweep Program.  The Racketeering Acts, which occurred, and continue to occur, regularly and continuously during the operation of the Sweep Program over a multi-year period, constitute a "pattern of racketeering activity."  The Racketeering Acts are made possible by the regular, repeated, and continuous use of the employees, facilities, and services of JPMS.

76.     Defendants' Racketeering Acts include the following indictable, predicate offenses:

(a)     **Mail Fraud**: Defendants violate 18 U.S.C. §1341 by sending and receiving materials via United States mail and commercial interstate carriers for the purpose of conducting the fraudulent Sweep Program scheme, including the Sweep Program Documents.  As described above, the Sweep Program Documents contain material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

(b)     **Wire Fraud**: Defendants violate 18 U.S.C. §1343 by transmitting and receiving writings and sounds by means of interstate wire communication for the purpose of conducting the fraudulent Sweep Program scheme.  The writings include the Sweep Program Documents, which are posted on Defendants' public website.  As described above, the Sweep Program Documents contain material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

77.    Defendants conduct the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participate in a common course of conduct in furtherance of the Sweep Program scheme, including mailing and transmitting the Sweep Program Documents to customers.

78.    Plaintiff and the Class suffer damages by reason of Defendants' payment of unreasonably low interest rates on their Sweep Program deposits, in violation of 18 U.S.C. §1962(c)-(d).

79.    Plaintiff's and the Class's injuries are directly and proximately caused by Defendants' racketeering activity.

## COUNT VI

## NEGLIGENCE AGAINST ALL DEFENDANTS

80.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

81.    JPMS is the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  JPMorgan owns and controls JPMS.

82.    Defendants owe Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

83.    Defendants' conduct with respect to the Sweep Program, as described above, is negligent.  By failing to provide Plaintiff and the Class with reasonable interest rates on their deposits in the Sweep Program, Defendants breach their duty to act with reasonable care.

84.    Defendants' negligence directly and proximately causes harm to Plaintiff and the Class.

## COUNT VII

### NEGLIGENT MISREPRESENTATIONS AND OMISSIONS
### AGAINST ALL DEFENDANTS

85.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

86.    JPMS is the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  JPMorgan owns and controls JPMS.

87.    Defendants owe Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

88.    Defendants negligently makes material misrepresentations and omissions in the Sweep Program Documents, as described above.

89.    Plaintiff and the proposed Class justifiably relied on Defendants' Sweep Program Documents and accordingly deposited and maintained cash balances in the Sweep Program to their detriment.

90.    Defendants' material misrepresentations and omissions directly and proximately cause harm to Plaintiff and the proposed Class.

## COUNT VIII

### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

91.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

92.    Defendants financially benefit from the unlawful acts alleged herein by paying Plaintiff and the Class unreasonably low and below market interest payments on their Sweep Program balances.  These unlawful acts cause Plaintiff and the Class to suffer injury and monetary loss.

93.     As a result of the unlawful acts alleged herein, Defendants are unjustly enriched at the expense of Plaintiff and the Class.

94.     Defendants have received, and are holding, funds belonging to Plaintiff and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Class.

## COUNT IX

## VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW § 349
## AGAINST ALL DEFENDANTS

95.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

96.     Defendants' acts and practices with respect to the Sweep Program, as described above, constitute unlawful, unfair, misleading, and deceptive business acts and practices in violation of Section 349 of New York's General Business Law ("GBL").

97.     Defendants' misleading and deceptive business acts and practices with respect to the Sweep Program adversely impact Plaintiff and the Class and, therefore, constitute consumer-oriented conduct under GBL §349, which results in direct harm to Plaintiff and the Class.

98.     Accordingly, Plaintiff and the Class seek appropriate relief under GBL §349, including injunctive relief and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief and judgment, as follows:

A.      Declaring that this action is a proper class action and appointing Plaintiff as Class representative and Plaintiff's counsel as Class Counsel for the proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding treble damages in favor of Plaintiff and the Class;

D.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

E.      Ordering rescission of the Account Agreement and restitution of all fees and other benefits received by Defendants thereunder; and

F.      Such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: December 12, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEPHEN R. ASTLEY
ANDREW T. REES
RENE A. GONZALEZ
SCOTT I. DION


_s/ Stephen R. Astley_
STEPHEN R. ASTLEY

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
sastley@rgrdlaw.com
arees@rgrdlaw.com
rgonzalez@rgrdlaw.com
sdion@rgrdlaw.com

_Attorneys for Plaintiff_